UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
COUNTY OF DUTCHESS,

                                    Plaintiff,

     - against -

CSX TRANSPORTATION, INC., and
APPROXIMATELY FIVE ACRES OF A RAILROAD
RIGHT-OF-WAY LOCATED BETWEEN MORGAN
LAKE IN THE TOWN OF POUGHKEEPSIE AND
WASHINGTON STREET IN THE CITY OF
POUGHKEEPSIE,

                                  Defendants.
-------------------------------------------------------------------x

09-CV-5606 (CS)

**MEMORANDUM DECISION
AND ORDER**

Appearances:

Kenneth J. Applebaum, Esq.
Charles Street Webb , III
Berger and Webb
New York, New York
*Counsel for Plaintiff*

Kathryn B. Daly, Esq.
Wiliam P. Byrne, Esq.
Zachary R. Potter, Esq.
Holland & Knight LLP
New York , New York
*Counsel for Defendant*

Jonathan M. Houghton, Esq.
Goldstein, Goldstein, Rikon & Gottlieb, P.C.
New York , New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is Defendant CSX Transportation, Inc.'s ("CSX") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject matter jurisdiction over this case. (Doc. 15.) Plaintiff County of Dutchess ("County") filed a

Petition in Dutchess County Supreme Court on May 20, 2009, seeking condemnation of approximately five acres of a railroad right-of-way in Poughkeepsie, New York, owned by CSX (the "Property").  CSX removed the case to this Court on June 18, 2009.  (Doc. 1.)

The Court assumes the Parties' familiarity with the relevant factual and procedural background of this case, both before this Court and before the Surface Transportation Board ("STB").[1]  In brief, on June 29, 2004, CSX filed a petition with the STB, seeking, pursuant to 49 U.S.C. § 10502, an exemption from the prior approval requirements set forth in 49 U.S.C. § 10903 in order to discontinue service over and abandon the Property and remove it from the national rail system.[2]  (Decl. of Ronald L. Wozniak in Opp'n to Mot. to Dismiss ("Wozniak

---

[1] The STB is an economic regulatory agency, created in the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), that Congress charged with the fundamental missions of resolving railroad rate and service disputes and reviewing proposed railroad mergers. The adjudicatory body of the STB has jurisdiction over a variety of railroad transactions, including mergers, line sales, line construction, and line abandonments.  Surface Transportation Board, Overview of the STB, http://www.stb.dot.gov/stb/about/overview.html (last visited Sept. 9, 2009).

[2] "[I]n order to abandon a line that is subject to STB jurisdiction, a railroad must apply to the STB under either 49 U.S.C. § 10903 (standard abandonment), or 49 U.S.C. § 10502 (abandonment by exemption)."  *Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006). Thus, in a typical case, a rail carrier seeking to abandon rail property must satisfy the various steps set forth in 49 U.S.C. § 10903.  *See Terminal Warehouse, Inc. v. CSX Transp.*, 175 F. App'x 715, 717 (6th Cir. 2006).  "If a carrier meets certain conditions, however, it can seek an exemption from the usual abandonment requirements."  *Id.*

> The STB has the authority to exempt a rail carrier seeking to abandon a rail line from the ordinary procedures applicable to rail abandonments if the carrier certifies that no local traffic has moved over the line for at least two years; that any traffic on the line can be rerouted over other lines; and that no formal complaints regarding cessation of rail service on the line are pending or have been decided within the previous two years.

*Baros v. Tex. Mex. Ry.*, 400 F.3d 228, 230 (5th Cir. 2005).  If the STB finds a proposed

Decl.") ¶ 7, Ex. C; Decl. of Kim Rice Bongiovanni in Supp. of CSX's Not. of Removal ("Bongiovanni Decl.") Ex. 1.) .)  On July 7, 2004, the County filed a request with the STB for the issuance of a Notice of Interim Trail Use ("NITU") and for a public use condition, which, if granted, would maintain the Property's inclusion in the national rail system and preserve the Property for future trail (and, theoretically, rail) use.  (Wozniak Decl. ¶ 8, Ex. D.)

On October 15, 2004, the STB issued a decision, granting CSX's request for an exemption, subject to trail use, public use, and environmental and other conditions. (Bongiovanni Decl. Ex. 1.)  Further, the STB gave CSX and the County a time limit within which to negotiate the NITU and acquisition of the property for public use – a limit that was extended upon the Parties' request numerous times, most recently to September 19, 2009. (Wozniak Decl. Ex. F; Decl. of William P. Byrne in Supp. of CSX's Mot. to Dismiss ("Byrne Decl.") Exs. 1, 2.)  On March 23, 2009, the STB also extended to November 18, 2009, the deadline for CSX to file a notice of consummation of abandonment of the Property.  (Wozniak Decl. Ex. F.)  Frustrated with the pace of the negotiations, the County initiated the instant condemnation proceeding, seeking a fee simple absolute interest in the Property for use as part of the Dutchess Rail Trail, a hiking and cycling trail, which is set to be unveiled in October of this year.  (Hr'g Tr., July 1, 2009, 4 ("We spent numerous days and years trying to negotiate with CSX to no avail.  Finally, when we recognize[d] . . . the urgency of it by October of this year for

---

abandonment is exempt, it considers whether the property would be appropriate for public use. *Id*.  If so, conditions can be imposed on the abandonment, "including a prohibition on disposing of the property for 180 days unless the property is first offered for sale on reasonable terms for public purposes." *Id*.

3

the proceedings that will take place at the Poughkeepsie Bridge, we had to somehow acquire this property.").)

Pursuant to the ICCTA, Congress has entrusted the STB with the plenary and exclusive authority to determine the fate of rail property through abandonment proceedings. *See* 49 U.S.C. §§ 10101 *et seq*. "The exclusive and plenary nature of the [STB's] authority to rule on carriers' decisions to abandon lines is critical to the congressional scheme, which contemplates comprehensive administrative regulation of interstate commerce." *Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 319 (1981). The ICCTA provides that:

> [t]he jurisdiction of the [STB] over . . . transportation by rail carriers [and] . . . the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive[, and] . . . the remedies provided under this part . . . with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

Once the STB approves an abandonment application or, as here, grants an exemption, it "retains jurisdiction over the abandoned line until the railroad fulfills any conditions imposed in the STB abandonment decision and files a notice of consummation with the STB." *Wilson v. Norfolk S. Ry. Co.*, No. 08-CV-395, 2009 WL 189397, at *4 (W.D.N.C. Jan. 26, 2009). Once consummated, "[a]bandonment frees subservient landowners to exercise reversionary rights in, and local governments to condemn, the railroad's right-of-way." *City of S. Bend v. Surface Transp. Bd.*, 566 F.3d 1166, 1168 (D.C. Cir. 2009).

In moving to dismiss this action pursuant to Rule 12(b)(1), CSX argues that the County's condemnation proceeding is preempted by the ICCTA and that the STB has exclusive

4

jurisdiction over the fate of the Property while the abandonment proceedings are pending. Therefore, according to CSX, the Court lacks subject matter jurisdiction over the County's condemnation proceeding and must dismiss the case. According to the County, which, as Plaintiff, "has the burden of proving subject matter jurisdiction," *see Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009), the STB has no jurisdiction over the Property, and therefore this Court does, because (1) the track at issue is an industrial or spur track over which, pursuant to 49 U.S.C. § 10906, the Board has no authority; and (2) CSX has already abandoned the Property, divesting the STB of jurisdiction (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 4). The Court, having reviewed the Parties' respective submissions and the relevant statutory and case law, finds that Plaintiff's condemnation proceeding is preempted by the ICCTA; that, therefore, the STB has exclusive jurisdiction over the fate of the Property; and that, as a result, the Court lacks subject matter jurisdiction over this matter and must dismiss this case.

Federal law preempts state law when:

> (1) the preemptive intent is explicitly stated in a federal statute's language or implicitly contained in its structure and purpose; (2) state law actually conflicts with federal law; or (3) federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

*Green Mt. R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005) (internal quotation marks and brackets omitted). "Express preemption arises when a federal statute expressly directs that state law be ousted." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009) (internal quotation marks omitted). Congress' preemptive intent is clearly set forth in the ICCTA's express preemption clause. *See* 49 U.S.C. § 10501(b). That being said, however, "whether a

certain state action is preempted requires a fact-specific inquiry." *Buffalo S. R.R. v. Vill. of Croton-On-Hudson*, 434 F. Supp. 2d 241, 249 (S.D.N.Y. 2006). The ICCTA "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Island Park*, 559 F.3d at 102 (internal quotation marks omitted).

It is clear that the instant condemnation proceeding is preempted by the ICCTA and its broad grant of exclusive jurisdiction to the STB. *See Buffalo S. R.R.*, 434 F. Supp. 2d at 249 ("no question that the Village's intended exercise of its eminent domain power [to obtain fee simple interest in railroad property] exceeds what is permitted under the ICCTA"); *Wis. Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013-14 (W.D. Wis. 2000) (state condemnation proceeding preempted by ICCTA because "[t]he City is impermissibly attempting to subject to state law property that Congress specifically put out of reach"). The STB is actually exercising its exclusive jurisdiction over railroad abandonment proceedings with regard to the Property at issue here, through, among other things, the issuance of a NITU and the imposition of conditions on CSX's ability to abandon the Property. The condemnation proceeding – which, if successful, would take the Property from CSX and give the County a fee simple interest in the Property – would thus directly interfere with the STB's proceedings and run afoul of the ICCTA's jurisdictional and express preemption provision.

The County seems to recognize that, under the ICCTA, the STB did have exclusive jurisdiction over the fate of the Property at one time, but argues that the STB no longer has authority since the tracks at issue are spur or industrial tracks that CSX has already abandoned. (Pl.'s Opp'n 2 ("In light of the fact that an abandonment of the Property, which is spur or

6

industrial track, has already occurred, the law is clear that STB *no longer* has jurisdiction over the Property." (emphasis added)); 4 ("Because CSX has abandoned the Property, the STB *no longer* has jurisdiction." (emphasis added)); 8 ("As it has been demonstrated that the Property is spur or industrial track that CSX has clearly abandoned in fact, the STB *no longer* retains jurisdiction over the track." (emphasis added)).)  Thus, according to the County, since the STB's exclusive jurisdiction no longer applies, this Court is free to entertain the County's condemnation proceeding.  The Court rejects this argument.

     First, even if the track was spur or industrial track (which CSX disputes), the STB would still have exclusive jurisdiction.  The County relies on 49 U.S.C. § 10906, which provides:  "The [STB] does not have authority under this chapter . . . over construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks."  49 U.S.C. § 10906.  At first blush this provision seems to contradict Section 10501(b), which gives the STB exclusive jurisdiction over such tracks, but most courts have reconciled these provisions as follows:  "When sections 10906 and 10501(b)(2) are read together, it is clear that Congress intended to remove [STB] authority over the entry and exit of these auxiliary tracks, while still preempting state jurisdiction over them, leaving the construction and disposition of [them] entirely to railroad management."  *Port City Props. v. Union Pacific R.R. Co.*, 518 F.3d 1186, 1188 (10th Cir. 2008) (quoting *Cities of Auburn & Kent*, 2 S.T.B. 330, 1997 STB LEXIS 143, at *23 (1997)) (alteration in original).  Thus, while the STB has exclusive jurisdiction over these tracks, and thus no other entity may regulate them, even the STB may not exercise authority over such tracks, and rail companies may dispose of them as they see fit.  *See id*. at 1189 (STB authorization not required to abandon spur and industrial tracks).  This "jurisdictional void," *id.*

at 1188, precludes, rather than permits, jurisdiction over spur or industrial tracks by this or the state court.

Second, while the County now claims that the STB has no authority with respect to the Property, as far as the Court can tell, the County has never challenged the STB's exercise of jurisdiction in the course of the five years that the Property has been the subject of STB proceedings. Instead, the County has participated in the STB proceedings, requesting a NITU and public use condition from the STB, and requesting from the STB permission and numerous extensions to engage in negotiations with CSX to acquire the Property. Even if the STB did not have jurisdiction over the Property due to the type of tracks at issue (which is not the case), the fact is that the STB has been exercising jurisdiction over the Property since 2004 in proceedings in which the County has participated. In doing so, the STB has implicitly found that it does have authority with respect to the abandonment of the Property. *See Consol. Rail Corp. v. Surface Transp. Bd.*, 571 F.3d 13, 19-20 (D.C. Cir. 2009) ("Because the Board does not have authority over abandonment of spur . . . [or] industrial . . . tracks, the Board's approval or denial of an abandonment application presupposes that the trackage for which abandonment is sought is part of the rail carrier's railroad lines subject to the Board's abandonment authority . . . ." (internal citations and quotation marks omitted)). That the County has now become frustrated with the pace of the STB proceedings and negotiations with CSX, (*see* Pl.'s Opp'n 4 ("The County decided to initiate condemnation proceedings with the hope that CSX might come back to the table with a more realistic approach.")), does not permit this Court to entertain what amounts to an improper collateral attack on the STB's exercise of jurisdiction.

In other words, the County's claim that the STB lacks jurisdiction is in effect a challenge to the STB's determination that it does. But the courts of appeals of the United States "ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of the Surface Transportation Board . . . ." 28 U.S.C. § 2342(5); *see also* 28 U.S.C. § 2321(a) ("a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board shall be brought in the court of appeals"). Therefore, even if the STB were improperly exercising jurisdiction in this matter, this is not the proper Court in which to challenge it. *See King County v. Rasmussen*, 299 F.3d 1077, 1089 (9th Cir. 2002) (district court does not have "jurisdiction to consider the subject matter jurisdiction of the STB"); *Grantwood Vill. v. Missouri R.R. Co.*, 95 F.3d 654, 657-58 (8th Cir. 1996) (district courts lack jurisdiction to review STB decisions).

Third, the County's argument that the STB's jurisdiction was stripped due to CSX's *de facto* abandonment of the property is without merit. The abandonment proceedings dealing with the Property are currently pending before the STB, and the STB has given CSX until November 18, 2009, to file a notice of consummation. Until CSX satisfies the conditions on which the STB authorizes the abandonment and files a formal notice of consummation of the abandonment, the STB retains exclusive authority over the fate of the Property, preempting the County's condemnation proceeding. *See Baros*, 400 F.3d at 236 ("[I]t is only upon actual consummation of the abandonment that the STB's jurisdiction ceases."); *Grantwood Vill.*, 95 F.3d at 659 ("State law claims can only be brought *after* the [STB] has authorized an abandonment and after the railroad has consummated that abandonment authorization. . . . [The railroad] could have only abandoned its right-of-way . . . if the [STB] made such a determination, which it has not done in

9

this case." (emphasis in original)); *Wilson*, 2009 WL 189397, at *4 ("If the STB approves a standard application or grants an exemption . . . , the STB retains jurisdiction over the abandoned line until the railroad fulfills any conditions imposed in the STB abandonment decision and files a notice of consummation with the STB.  At that point, the STB relinquishes jurisdiction over the abandoned railroad right of way . . . .").  It is clear from as recently as August 24, 2009, when the STB issued another decision with respect to the Property – this time granting another party, the Poughkeepsie-Highland Bridge Co., Inc., a NITU and negotiating period to run concurrently with the County's, (Letter from William P. Byrne, Esq. to the Court, dated August 26, 2009 Ex.) – that the STB does not consider CSX to have abandoned the property.[3]  *See Baros*, 400 F.3d at 237 (because STB's jurisdiction terminates when abandonment is consummated, STB's decisions and orders with regard to subject property "implicitly" determined that abandonment of that property had not already been consummated).  In fact, in both its March 23 and August 24 decisions, the STB provided a deadline for CSX's abandonment of the property, as well as set conditions that must be met in order for CSX to exercise its abandonment authority.  It is for the STB, and not this Court, to decide when the Property has been abandoned.  *See Baros*, 400 F.3d at 236 ("[B]ecause the original abandonment authorization was conditional, the determination of whether there has actually been an abandonment is within the primary and exclusive jurisdiction

---

[3] The fact that NITUs have been issued by the STB and are still in effect for the Property further demonstrate that no abandonment has occurred.  *See Baros*, 400 F.3d at 236 ("The relevant STB regulation states that expiration of a NITU will permit a railroad fully to abandon the line, therefore indicating that an effective certificate of abandonment authorizes, but does not itself establish, complete consummation of the abandonment.  Thus, an effective certificate of abandonment confers permissive authority on the railroad; until the railroad actually consummates an abandonment, none occurs, and the [STB] retains jurisdiction over the railroad's right-of-way." (internal citations and quotation marks omitted) (emphasis in original)).

of the STB."). Again, any problem the County has with the STB's treatment of the Property as not yet abandoned or with the STB's exercise of jurisdiction in general cannot be addressed by this Court. *See id.* at 237 (courts of appeals have exclusive jurisdiction over challenge to STB's "implicit decision that [property owner] had not consummated the abandonment").

For the foregoing reasons, the Court dismisses Plaintiff County's Petition for lack of subject matter jursidiction. The Clerk of Court is respectfully directed to terminate the pending Motion (Doc. 15), enter judgment in favor of Defendant, and close this case.

**SO ORDERED.**

Dated: September __10__, 2009
       White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

11